CARAWAY, J.
| t Melvin Johnson was convicted of armed robbery with a firearm following a *544 unanimous jury verdict. He was subsequently adjudicated a third-felony offender and sentenced to 198 years’ imprisonment without the benefit of parole, probation or suspension of sentence for the armed robbery conviction, and an additional consecutive 5 years for the use of a firearm during the armed robbery. Johnson appeals his conviction and sentence. We amend his sentence and affirm.

Facts

On March 24, 2011, Melvin Johnson was charged by amended bill of information with armed robbery with a firearm, in violation of La. R.S. 14:64 and 14:64.8 arising out of an armed robbery of a gas station. .
Johnson’s jury trial commenced with the testimony of the victim, Tanya Patterson. Patterson, a clerk at the Exxon gas station on North Market Street, in Shreveport, Louisiana, stated that on September 16, 2009, she was working the night shift by herself. Near midnight a man came into the store and asked Patterson about the price of a package of cigarettes. Patterson, who was stocking the store at the time, told the man the price and he responded by saying that he did not have enough money and would have to return later.
About 30 minutes later, the man, whom Patterson identified as Johnson, returned to the store. Patterson went behind the counter to get the cigarettes, and as she told Johnson how much he owed, she saw that he had cash in one of his hands. Patterson testified that Johnson reached into his |2sweatshirt pocket and pulled out a silver revolver which he pointed at her. Johnson then told the victim to open the register. Patterson opened the register and stepped away while Johnson grabbed about $100 from the drawer. Johnson told Patterson he also wanted a carton of cigarettes. Patterson handed him a carton, and Johnson instructed her to move down to the other end of the counter and unlock the chain so he could come behind the counter with her. She complied, and Johnson pointed the gun at her and told her “[wje’re going to go towards the back and I’m going to shoot you.” Patterson pleaded with Johnson not to shoot her because she had a family that depended on her. He again insisted that she go into the back room so he could shoot her, but at that moment a customer entered the store. When Patterson told Johnson about the customer, he departed.
Patterson explained that during the encounter she was trying to notice details including observing the man’s face to identify him later. Patterson stated that Johnson wore a hooded sweatshirt, a baseball cap on his head and no mask.
After Johnson left, Patterson called 911. Deputies from the Caddo Parish Sheriffs Office responded to the scene, and Patterson gave them a description of the man and told them the direction he fled when he left the store. Patterson also informed the deputies that the store was equipped with a video surveillance system, which Patterson’s manager later provided to law enforcement.
Because of the surveillance tape and Crime Stoppers information obtained from the public broadcast of the tape, two days after the robbery, ^Detective Andy Scoggins met Patterson to show her a photographic lineup of suspects. Patterson testified that Detective Scoggins did not suggest any person in the lineup and simply asked if the man who robbed her was in any of the pictures. Patterson identified Johnson in the lineup and signed her name on the photo.[1] Patter *545 son stated that she knew immediately, 100%, that the photograph was of the man who robbed the store. Patterson identified Johnson in court as the man who robbed the store on September 16, 2009.
During Patterson’s testimony, the state then played the surveillance videotape[2] from the store camera. The fourth dip on the disk, which had no sound, showed Johnson walk up to the counter with cash in his hand. Patterson reached for a pack of cigarettes and began to ring up Johnson when he produced a silver handgun and pointed it at Patterson. Patterson then opened the cash register and Johnson grabbed the cash from the drawer. Johnson then got behind the counter and pointed the gun at Patterson. The two appeared to be talking when Johnson quickly left.
On cross-examination, Patterson stated that she did not tell the deputies that the robber had a tattoo on his face because she did not think about it. She admitted that Johnson has tattoos on his face. When asked, Patterson did not deny that she might have stated that the robber had on a black baseball cap, instead of a white one.
Deputy Eddie Thomas testified that after arriving at the scene after the robbery, Patterson told him that the robber was wearing a gray |4sweatshirt, black jeans and a white baseball cap. She also stated that she believed the robber was probably about 5'2" or 5'3", around 160 pounds and had a beard. Deputy Thomas stated that other deputies searched the area around the Exxon station for the robber, but did not find any suspects that night.
Corporal Jeff Thomas, an investigator with the Caddo Parish Sheriffs office and expert in the area of fingerprint identification, testified that he processed the scene at the gas station on September 16, 2009, by taking photographs and attempting to develop fingerprints where the robber had touched items in the store. No fingerprints were developed.
Detective Jason Morgan of the Caddo Parish Sheriffs Office testified that he investigated the September 16, 2009 robbery. After speaking with Patterson, Detective Morgan obtained a copy of the surveillance videotapes to view and was able to develop a still photograph of the robbery suspect which he sent to the media outlets in order to get information about the robber. The still photographs were displayed for the jury and show the robber with his face fully exposed to the camera.
Detective Morgan testified that several news stations played the video and displayed the still photographs and that several confidential informants called Crime Stoppers. After receiving a tip from a confidential source possibly identifying the defendant as the robbery suspect, Detective Morgan instructed Detective Scoggins to prepare the photographic lineup to show Patterson. At the same time Detective Scoggins was with Patterson, Detective Morgan and Detective Carl Henderson located Johnson at his | ¡¡sister's house. While in transit to Johnson’s sister’s house, Detective Morgan was told by Detective Scoggins that Patterson positively identified Johnson as the robber. Detective Morgan then arrested Johnson at the sister’s house. Johnson was wearing tennis shoes matching those worn by the robber in the surveillance videotape.[3] Johnson’s sister told deputies that on the day of *546 the robbery, she dropped Johnson off on Portland Avenue and he was wearing a gray sweatsuit.
Following Detective Morgan’s testimony, both the state and defense rested. The jury unanimously found Johnson guilty as charged of armed robbery with a firearm.
On March 31, 2011, Johnson filed motions for new trial and a motion for post-verdict judgment of acquittal. On the same day the state filed a habitual offender bill of information charging Johnson. The trial court eventually adjudicated Johnson a third-felony offender and denied Johnson’s motions for new trial and post-verdict judgment of acquittal.
On May 4, 2011, Johnson was sentenced. Prior to sentencing, the trial court noted its review of the sentencing factors set forth in La. C. Cr. P. art. 894.1 and concluded that there was an undue risk that Johnson would commit a crime if given a probated sentence. The trial court also found that Johnson was in need of correctional treatment, a conclusion based on the extensive criminal history set forth in his presentence investigation report. The trial court also determined that a lesser sentence would deprecate the seriousness of the offense and that Johnson had created a risk of death or |fibodily injury by pointing the gun at Patterson and telling her that he was going to shoot her. The trial court noted that Johnson’s age was a mitigating factor, although only a small one, given his extensive criminal history. Given the foregoing factors, the trial court sentenced Johnson to serve 198 years plus 5 consecutive years for the firearm enhancement, without the benefit of probation, parole or suspension of sentence. However, the trial court did not specify that Johnson’s sentence was to be served at hard labor.
On August 12, 2011, Johnson filed a motion to reconsider sentence, arguing that the sentence imposed was unconstitutionally harsh and excessive; the trial court denied the motion. Johnson now appeals.

Discussion

In his first assigned error, Johnson argues that no physical evidence exists tying him to the armed robbery. He also argues that Patterson’s identification of him is suspect because she never indicated that the armed robber had tattoos on his face. He urges other inconsistencies in Patterson’s description of the armed robber including Patterson’s descriptions of the cap the robber wore and her estimate of the armed robber’s weight, height and facial hair description which were different from Johnson’s characteristics. Johnson also argues that the Crime Stoppers’ tip was hearsay evidence that confused the jury.
Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous|7weapon. La. R.S. 14:64. If the crime is committed with the use of a firearm, a person can also be charged with La. R.S. 14:64.3, which provides for a sentencing enhancement of an additional five years to be served without benefits and consecutively to the sentence imposed under the provisions of La. R.S. 14:64. State v. Williams, 40,866 (La.App. 2 Cir. 4/26/06), 930 So.2d 203, writs denied, 06-1590 (La.1/8/07), 948 So.2d 121, 06-1750 (La.4/5/07), 954 So.2d 132.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, *547 2789, 61 L.Ed.2d 560 (1979); State v. Tate, 01-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132.
In cases where the key issue is the defendant’s identity as the perpetrator, rather than whether the crime was committed, the state is required to negate any reasonable probability of misidentification. State v. Dorsey, 10-0216 (La.9/7/11), 74 So.3d 603, cert denied, — U.S. -, 132 S.Ct. 1859, 182 L.Ed.2d 658, 80 USLW 3563 (2012); State v. Neal, 00-0674 (La.6/29/01), 796 So.2d 649, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002). A victim’s or witness’s testimony alone is usually sufficient to support the verdict, as appellate courts will not second-guess the credibility determinations of the fact finder beyond the constitutional |sstandard of sufficiency. State v. Dorsey, supra. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the fact finder, is sufficient support for a requisite factual conclusion. State v. Dorsey, supra; State v. Robinson, 02-1869 (La.4/14/04), 874 So.2d 66, cert. denied, 543 U.S. 1023, 125 S.Ct. 658, 160 L.Ed.2d 499 (2004). A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 07-1209 (La.12/14/07), 970 So.2d 529.
The defense’s position concerning Johnson’s tattoos results from a very brief cross-examination inquiry of Patterson in which insufficient details of the tattoos were revealed. The state’s evidence of the photo lineup reveals six individuals, including the defendant, none of whom have noticeable facial tattoos. Likewise, the still photos of the robber and video surveillance tape reveal no tattoos. Patterson also identified Johnson at trial. Nevertheless, in the brief questioning concerning the tattoos by the defense in cross-examination, Patterson was not asked about any difference between Johnson’s photo appearing on the lineup and his appearance in court. The record does not disclose Johnson’s appearance via a photo at the time of trial or after the robbery. Therefore, the record, which contains overall a sufficient identification of Johnson as the robber, does not establish any tattoos placing Johnson’s identification in doubt.
Viewing the evidence in a light most favorable to the prosecution, the evidence adduced at trial was sufficient to convict Johnson of armed 19robbery with a firearm. Patterson’s face-to-face encounter with the perpetrator on two separate occasions within a 30-minute period on the evening of the crime allowed her to identify Johnson. She gave a description of the man to law enforcement, and two days later picked Johnson out of a photographic lineup with “100%” certainty that he was the armed robber. She had been trained in observation techniques as part of her employment and used those techniques during the crime. From these facts the jury could have reasonably found the testimony credible. Moreover, the physical evidence presented at trial, namely the videotape of the armed robbery and still photographs of the armed robber, completely corroborated and substantiated the victim’s testimony.[4] Thus, the verdict was *548 reasonably supported by the evidence. Accordingly, the assignment lacks merit.
Through his counsel, Johnson also argues that the 203-year sentence is unconstitutionally excessive, represents nothing more than a purposeless and needless imposition of pain and suffering and is out of proportion to the severity of the crime especially considering the small amount of cash involved. In a pro se brief, Johnson argues that the sentence is unconstitutionally excessive given that he will be imprisoned for longer than his natural life. Johnson also argues that the additional 5-year sentence for the crime of armed robbery with a firearm constitutes double | ^enhancement and that his sentence is illegal because the trial court failed to direct that the sentence be served at hard labor.
At the time of the present offense, La. R.S. 15:529.1(A)(l)(b) provided, in pertinent part:
If the third felony is such that upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life then:
(I) The person shall be sentenced to imprisonment for a determinate term not less than two-thirds of the longest possible sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction.
La. R.S. 14:64(B) provides:
Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than ten years and for not more than ninety-nine years, without benefit parole, probation or suspension of sentence.
La. R.S. 14:64.S(A) provides:
When the dangerous weapon used in the commission of the crime of armed robbery is a firearm, the offender shall be imprisoned at hard labor for an additional period of five years without benefit of parole, probation, or suspension of sentence. The additional penalty imposed pursuant to this Subsection shall be served consecutively to the sentence imposed under the provisions of R.S. 14:64.
When, as here, a defendant’s motion for reconsideration urges merely that the sentence is excessive, he is relegated only to a claim of constitutional excessiveness. State v. Mims, 619 So.2d 1059 (La.1993); State v. Nelams, 45,817 (La.App.2d Cir.11/3/10), 55 So.3d 30. Constitutional review turns upon whether the sentence is illegal, grossly disproportionate to the severity of the offense or shocking to the sense of justice. State v. Lobato, 603 So.2d 739 (La.1992). A trial court has broad Indiscretion in sentencing offenders. Absent a showing of manifest abuse of that discretion, an appellate court may not set aside a sentence as excessive. State v. Kidd, 45,638 (La.App.2d Cir.11/3/10), 55 So.3d 90.
A trial court has wide discretion to sentence within the statutory limits. State v. Black, 28,100 (La.App.2d Cir.2/28/96), 669 So.2d 667, writ denied, 96-0836 (La.9/20/96), 679 So.2d 430. Absent a showing of manifest abuse of discretion, a sentence will not be set aside as excessive. Id., citing State v. Square, 433 So.2d 104 (La.1983).
*549 As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses. State v. Cozzetto, 07-2031 (La.2/15/08), 974 So.2d 665; State v. McKinney, 43,061 (La.App.2d Cir.2/13/08), 976 So.2d 802.
Johnson’s sentencing range was 71 to 203 years at hard labor without the benefit of parole, probation or suspension of sentence, including the mandatory 5-year sentence enhancement of La. R.S. 14:64.3.[5] Thus, for the offense of conviction, Johnson received the maximum sentence. Given his criminal history and the facts of the case, however, the maximum sentence is not excessive. Johnson maintained an extensive criminal history which included yearly burglary and theft offenses from 1978 through 1987 when he was convicted of felony theft and received a 10-year hard labor sentence. 112His criminal activity began again in 1999 after he got out of jail and continued through 2005 during which time he was convicted of another theft and two drug offenses. Johnson’s criminal record culminated in the present armed robbery conviction and another pending armed robbery charge, both in 2009.
As the trial court observed, much of Johnson’s life has been dedicated to crime. Moreover, he has obviously failed to respond to prior leniency in sentencing and probationary treatment as can be seen in the fact that his criminal activity escalated into crimes of violence. The seriousness of the present offense cannot be overlooked as the threat of death to an innocent victim clearly overshadows the small amount of cash involved. For these reasons, we find Johnson to be the worst type of offender who involved himself in the worst type of offense. Accordingly, the maximum sentence imposed is not out of proportion to the severity of this offense.
Johnson’s pro se enhancement argument is also without merit. In State v. King, 06-1903 (La.10/16/07), 969 So.2d 1228, the Louisiana Supreme Court held that the mandatory addition of the 5-year sentence enhancement provided in La. R.S. 14:64.3 should be imposed upon a defendant convicted of armed robbery with a firearm when the defendant has also been adjudicated a habitual offender. In King, supra, the defendant was adjudicated a second-felony offender and was sentenced to serve 203 years at hard labor without the benefit of parole, probation or suspension of sentence.
| i-jWe find merit to Johnson’s argument that the sentence is illegal. The transcript of the sentencing hearing reveals that the trial court failed to specify that the sentence would be served at hard labor, as required by La. R.S. 14:64 and 14-.64.3.[6] A sentence enhanced under the habitual offender statute is computed by reference to the underlying offense. State v. Robinson, 46,330 (La.App.2d Cir.2/18/11), 54 So.3d 1292, writ denied, *550 11-0668 (La.3/2/12), 88 So.3d 1041. Further, La. R.S. 15:529.1(G) mandates that any sentence imposed under the Habitual Offender Law shall be served at hard labor. La. C. Cr. P. art. 882(A) states that an illegal sentence may be corrected at any time by the court imposing the sentence or by an appellate court on review. Accordingly, Johnson’s sentence is amended to reflect that the sentence imposed shall be served at hard labor.

Decree

Johnson’s conviction is affirmed. As amended, his sentence is affirmed.
CONVICTION AFFIRMED; SENTENCE AMENDED AND, AS AMENDED, AFFIRMED.

. The lineup was admitted into evidence as State’s Exhibit 6.

. The video was admitted into evidence as State’s Exhibit 1.

. Johnson’s shoes were confiscated and were admitted into evidence at trial as State’s Exhibit 8.

. As part of this assignment of error, Johnson argues that the testimony indicating “that numerous crime stopper tipsters had identified Melvin Johnson as the robber” was impermissible hearsay. We note that the Crime Stoppers reference was not inadmissible hearsay because the statement was offered not for the truth of the tips but merely to explain the *548 officer’s actions in investigating Johnson at his sister’s home. See State v. Smith, 98-1417 (La.6/29/01), 793 So.2d 1199, cert. denied, 535 U.S. 937, 122 S.Ct. 1317, 152 L.Ed.2d 226 (2002). Moreover, because trial counsel did not object to the reference, the issue is waived on appeal. La.C.Cr.P. art. 841; State v. Smith, supra.

. Without the 5-year enhancement, Johnson’s sentencing range was 66 to 198 years under the habitual offender statute. The Legislature has sole authority under the Louisiana Constitution to define conduct as criminal and provide penalties for such conduct. La. Const. art. III, § I; State v. Johnson, 709 So.2d 672 (La.1998). Acting pursuant to this authority, the Legislature passed the Habitual Offender Law which has on numerous occasions been held to be constitutional. Louisiana’s Habitual Offender statute is simply an enhancement of punishment provision. It does not punish status and does not on its face impose cruel and unusual punishment. State v. Dorthey, 623 So.2d 1276 (La.1993).

. The minutes of May 4, 2011, reflect that the sentence was imposed at hard labor. When there is a discrepancy between the minutes and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732 (La.1983).