GARRETT, J.
hThe defendant, Larry W. Sims, was charged with second degree murder. Following a jury trial, he was convicted of manslaughter and sentenced to 40 years at hard labor. The defendant appealed. We affirm his conviction and sentence.
FACTS
In the early morning of November 19, 2011, the victim, Nelson Varela, was shot and killed in a trailer home in Caddo Parish. The residence was the home of a woman with whom the victim had a sexual relationship. She had left the night before with the defendant, leaving the victim at the trailer with her 11-year-old son, S.J. While watching television, the boy fell asleep on the living room sofa. He was awakened by the sound of a violent confrontation between the victim and an armed assailant who was demanding money. The victim was fatally shot. The child hid and, after the assailant left, fled the trailer to call 911 from a neighbor’s home.
The police developed the defendant as a suspect. S.J., who briefly saw the assailant’s profile, identified the defendant from a photo lineup. The defendant was arrested and charged with second degree murder. At trial, the defendant offered an alibi defense. However, a jury unanimously convicted him of the responsive verdict of manslaughter. The defendant’s motions for new trial and for post-verdict judgment of acquittal were denied. After reviewing a presentence investigation (PSI) report, the trial court imposed the maximum sentence of 40 years at hard labor. The defendant’s motion for reconsideration of sentence was denied.
|2The defendant now appeals, arguing that the evidence was insufficient and that the sentence imposed was excessive.
SUFFICIENCY OF EVIDENCE

Law

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La.App.2d Cir.1/9/08), 974 So.2d 181, writ denied, 2008-0499 (La.11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.2/22/06), 922 N So.2d 517; State v. Carey, 47,650 (La.App.2d Cir.2/27/13), 110 So.3d 221, writ denied, 2013-0726 (La.11/1/13), 125 So.3d 417.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of the evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, *598 the facts established by the direct evidence, and inferred from the circumstances established by that evidence, | .¡must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Carey, supra.
Where there is conflicting testimony concerning factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La.App. 2d Cir.9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d 566, and 2002-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Gullette, 43,032 (La.App. 2d Cir.2/13/08), 975 So.2d 753; State v. Baker, 49,175 (La.App. 2d Cir.8/27/14), 148 So.3d 217. Such testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence to- prove the commission of the offense by the defendant. State v. Moore, 44,429 (La.App.2d Cir.8/26/09), 20 So.3d 1137, writ not cons., 2009-2166 (La.4/9/10), 31 So.3d 378.
When the key issue is the defendant’s identity as the perpetrator, rather than whether the crime was committed, the state is required to negate any reasonable probability of misidentification. State v. Weary, 2003-3067 (La.4/24/06), 931 So.2d 297, cert. denied, 549 U.S. 1062, 127 S.Ct. 682, 166 L.Ed.2d 531 (2006); State v. Johnson, 47,313 (La.App. 2d Cir.8/8/12), 103 So.3d 542, writ denied, 2012-2036 (La.1/25/13), 105 So.3d 714. Positive identification by only one witness is sufficient to support a conviction. State v. Hughes, 2005-0992 (La.11/29/06), 943 So.2d 1047; State v. Jefferson, 47,009 (La.App. 2d Cir.3/7/12), 91 So.3d 1007, writ denied, 2012-0751 (La.11/2/12), 99 So.3d 661.
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a trier of fact’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App. 2d Cir.2/25/09), 3 So.3d 685, writ denied, 2009-0725 (La.12/11/09), 23 So.3d 913, cert. denied, 561 U.S. 1013, 130 S.Ct. 3472, 177 L.Ed.2d 1068 (2010).
Manslaughter is a homicide which would be murder under either La. R.S. 14:30 (first degree murder) or La. R.S. 14:30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. La. R.S. 14:31.

Discussion

The defendant contends that the evidence presented by the state was insufficient to support his conviction for manslaughter. He emphasizes the lack of forensic and physical evidence linking him to the killing. He also assails the young eyewitness’s identification of him. Finally, he asserts that his alibi evidence excluded him as the perpetrator of the crime.
IbS.J., the witness who identified the defendant as the man who killed the victim, was 11 years old at the time of the murder and 13 years old when the case was tried. At the time of trial, he was in the seventh grade. He explained that, prior to the shooting, he had completed the DARE program in school and thus had learned *599 what to do in the event of a situation in which law enforcement should be notified. He testified that he had fallen asleep on the living room sofa while watching television. He remembered the name of the show he was watching, “Family Guy.” He later awoke to the sounds of a violent fight in his own bedroom, which was adjacent to the living room. The boy looked into the bedroom and saw the victim being attacked by a tall black male with a grayish beard. He testified that he saw the side of the assailant’s face for about seven seconds. He also observed that the assailant was armed with a silver gun. When he saw the gun, the frightened child ran toward the kitchen and ducked down. About 10 seconds later, he heard a gunshot. Because he was afraid of being shot, he ran back to his mother’s bedroom, which was located at the opposite end of the trailer from his bedroom. He shut the door to his mother’s bedroom for a few seconds. The assailant apparently departed while the child was hiding in his mother’s bedroom. Unable to finding a working phone, S.J. fled the trailer to seek assistance. Before he left, he saw the victim lying on the bedroom floor, holding his stomach and moaning. S.J. ran to a neighboring home, but no one answered the door. He then went to nearby apartments, where he was able to use a neigh-, bor’s phone to call 911.[1] Police records | fishowed that the call was received at 5:53 a.m. According to S.J.’s testimony, the call was placed about three minutes after he woke to the sounds of a physical fight.
The police showed S.J. two photo lineups. The first lineup displayed front facial photos of six men, one of whom was the defendant. S.J. did not identify the shooter from this lineup as he was not entirely sure from the front facial photos. The second lineup had profile photos of six men; they included the defendant and another man from the first lineup. S.J. initially identified the defendant and another man as being similar to the shooter before ultimately identifying the defendant as the assailant who shot and killed the victim. At trial, S.J. again identified the defendant as the shooter.
S.J.’s mother testified that she had a sexual relationship with the victim. On the night before the murder, they played a drinking game and had sex in her bedroom. The victim, who had consumed a large amount of alcohol, passed out in her son’s bedroom; the child had fallen asleep on the sofa watching television. While the victim was passed out, the defendant briefly came by the trailer. He left and later returned; this time S.J.’s mother left with him. According to her testimony, she had known the defendant for a year or more. They drove to a house five to seven minutes away. She testified that they went there after 3 a.m., maybe between 3:30 and 4 a.m. Once there, they smoked crack cocaine and drank for 30 to 45 minutes. | ./Thereafter, she heard the defendant on the phone. He told her that he had to take someone to the bank. She asked him to drop her off at her home on his way. He refused, instead asking her to wait and *600 said he would be right back in about five minutes. However, he did not return. She testified that she waited for him for between 1½ to 2½ hours. In the meantime, she tried to call home to check on her son and to ask the victim to come pick her up.[2] However, she was unable to reach anyone. At daylight, she began to walk home. A passing motorist gave her a ride home. When she arrived at about 7 a.m., the police were present. Within 20 minutes of her arrival, officers had her show them the house where she had been; the defendant’s car was not there at that time.
The parties stipulated that, if called to the stand, a friend of the defendant would have testified that she phoned the defendant at about 5:30 a.m. to ask him to take her to an ATM on Mansfield Road, that he complied with her request, and that he then took her home. The woman’s three ATM receipts dated November 19, 2011, and time-stamped 6:34 a.m., 6:35 a.m., and 6:35 a.m., were admitted into evidence. Also admitted were still photos taken by a security camera at the ATM, which showed the woman making her transactions; the defendant’s car is visible in the background. The defense also introduced the defendant’s booking photo, which was taken after his arrest on November 20, the day after the murder. While the defendant does not have a full beard in the photo, he does have facial hair |saround his mouth. Furthermore, the hair under his mouth appears to be gray.
Contrary to the defendant’s assertions, his alibi does not definitively preclude his involvement in the victim’s murder. The defendant’s female friend called him at about 5:30 a.m. to ask him to drive her to the ATM. The receipts and security camera photos place him at the ATM at 6:34 a.m., more than an hour later. The house where the defendant was smoking crack with S.J.’s mother was only minutes away from the crime scene. The defendant refused the request of S.J.’s mother to drop her off at her home on his way to pick up his friend. According to S.J.’s testimony, he was awakened by the sounds of fighting at approximately 5:50 a.m. The defendant had adequate time to drive from the residence, where he left S.J.’s mother, to the trailer — a place where the defendant had been only a few hours before and where the diminutive[3] victim was passed out and alone with a sleeping child.
As to S.J.’s description of the killer having a beard, we note that the booking photo of the defendant taken the day after the murder shows him having facial hair above and below his mouth. While he does not have a full beard, the defendant is not clean shaven either. At any rate, the booking photo only shows how the defendant looked at the time of his arrest, not at the time of the murder. The jury could have easily concluded 19that there was ample time between the murder and his arrest for the defendant to shave.
S.J., the only eyewitness to the murder, consistently identified the defendant as the killer in bo.th the profile lineup and again in court during his testimony. The jury obviously found the testimony of this composed and articulate young witness to be credible. The pictures of the crime scene corroborated his description of the horrific events that occurred in the trailer. The *601 jury had the benefit of both listening to the 911 phone call and observing S.J. in court. As previously noted, the testimony of one witness, if believed by the jury, is sufficient to sustain a conviction. The jury’s decision to accept S.J.’s testimony and his identification of the defendant as the man who murdered the victim is entitled to great deference on appeal.
The defendant also stresses that no DNA or other forensic evidence placed the defendant at the trailer at the time of the murder. However, the jury heard the totality of the evidence and was entitled to accord it the weight it felt it deserved.
Viewing the evidence in the light most favorable to the prosecution, we find that it was sufficient to prove the defendant’s identity as the man who killed the victim beyond a reasonable doubt. Accordingly, we conclude that this assignment of error lacks merit.
EXCESSIVE SENTENCE

Law

In reviewing a sentence for ex-cessiveness, an appellate court uses a two-step process. First, the record must show that the trial court took |incognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. The trial court is not required to list every aggravating or mitigating circumstance so long as the record reflects that it adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Lathan, 41,855 (La.App.2d Cir.2/28/07), 953 So.2d 890, writ denied, 2007-0805 (La.3/28/08), 978 So.2d 297. The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense, and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Ates, 43,327 (La.App.2d Cir.8/13/08), 989 So.2d 259, writ denied, 2008-2341 (La.5/15/09), 8 So.3d 581. There is no requirement that specific matters be given any particular weight at sentencing. State v. Shumaker, 41,547 (La.App.2d Cir.12/13/06), 945 So.2d 277, writ denied, 2007-0144 (La.9/28/07), 964 So.2d 351.
Second, the court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. Art. 1, § 20, if it is grossly out of proportion to the severity of the crime or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Lewis, 49,138 (La.App.2d Cir.6/25/14), 144 So.3d 1174. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of Inthe harm done to society, it shocks the sense of justice. State v. Weaver, 2001-0467 (La.1/15/02), 805 So.2d 166; State v. Lewis, supra.
The trial court has wide discretion in the imposition of sentences within the statutory limits and such sentences should not be set aside as excessive in the absence of a manifest abuse of that discretion. State v. Williams, 2003-3514 (La.12/13/04), 893 So.2d 7. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. State v. Jackson, 48,534 (La.App. 2d Cir.1/15/14), 130 So.3d 993.
Maximum sentences are generally reserved for the worst offenses and offenders. State v. Taylor, 41,898 (La.App. 2d Cir.4/4/07), 954 So.2d 804. Although the *602 Louisiana Supreme Court has stated that a maximum sentence is constitutionally excessive unless good reasons exist to distinguish the particular defendant and his crime as deserving of the heaviest sentence possible when compared with other persons in the same offender class and guilty of the same offense, one such reason is when the offense does not adequately describe the defendant’s conduct. State v. English, 582 So.2d 1358 (La.App. 2d Cir.1991), writ denied, 584 So.2d 1172 (La.1991).
Manslaughter is punishable by imprisonment at hard labor for not more than 40 years. La. R.S. 14:31.

Discussion

The 58-year-old defendant argues that the 40-year sentence imposed upon him by the trial court is a de facto life sentence. He maintains that | ^sentencing him to the maximum term of imprisonment for manslaughter is excessive and unnecessarily harsh. Specifically, he asserts that the sentence is grossly out of proportion to the severity of the crime and nothing more than purposeless and needless imposition of pain and suffering.
Before imposing sentence, the trial court thoroughly articulated the many aggravating factors present in the instant case. Most notably, the court reviewed the criminal history of the defendant, a career criminal who was correctly characterized by the court as an “eleventh felony offender.” The defendant’s extensive criminal record — which was documented in the PSI report — began in 1973, when he was 17 years old. The myriad charges and convictions ranged from drug distribution to theft to burglary to armed robbery. Throughout his adult life, the defendant has consistently displayed a total and blatant lack of regard for the law. In particular, he has a pattern of thefts, burglaries and a general propensity for taking other people’s property, which ultimately culminated in the death of the hapless victim in this case.
The trial court fully and carefully considered the factors set forth in La. C. Cr. P. art. 894.1. We concur with the court’s finding that there were many aggravating factors but no mitigating ones. Furthermore, we find no error in the court’s conclusion that the defendant’s actions were more akin to second degree murder than manslaughter, therefore justifying the imposition of the maximum sentence for manslaughter.
This assignment of error is meritless.
|1SERRQR PATENT
Our error patent review reveals that the trial court did not properly advise the defendant of the prescriptive period for seeking post-conviction relief, as required by La. C. Cr. P. art. 930.8(C). Therefore, we advise the defendant, by way of this opinion, that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C. Cr. P. arts. 914 or 922.
CONCLUSION
The defendant’s conviction and sentence are affirmed.
AFFIRMED..

. Review of the audio recording of this 911 call reveals remarkable composure on the part of this child under extremely distressing and frightening circumstances. He remained on the telephone with both the 911 operator and the police operator for a lengthy period of time. He was able to intelligently respond to the questions asked by the operators, such as the name of the trailer park and the lot num-her where he lived. He was also able to relate specific details, including the fact that the victim was not from Mexico but from a different country. (The victim was from Honduras.) Throughout the call, the child was extremely concerned about the safety of his mother, whose whereabouts at that time were unknown to him.

. S.J.’s mother was unable to recall the times at which she placed these calls. Questioning by defense counsel suggested that phone records showed the calls were placed at 6:15 and 6:30 a.m.

. The pathologist who performed the victim's autopsy testified that the victim was only 5'4" and weighed about 140 pounds. In contrast, the information provided with the defendant's booking photo stated that the defendant was 6'2" and weighed 220 pounds.