BROWN, Chief Judge.
1 ,A bill of information filed on August 30, 2007, charged defendant, Robert Franklin Bruce, with theft over $500, a violation of La. R.S. 14:67. The bill charged that “on April 12, 2007, Bruce did willfully, intentionally, and unlawfully commit a theft of approximately $8,500, the property of A.J. Wilson.” Having waived a jury trial, defendant was tried by the court. Following the presentation of evidence, the trial judge found defendant guilty as charged and imposed a sentence of ten years at hard labor to run consecutive to any sentence that he was currently serving. Defendant appealed his conviction and sentence. For the following reasons we affirm.

Facts

In March 2007, A.J. Wilson was given a house located on Crossroads Church Road in a rural area of Winn Parish, Louisiana, with the stipulation that the house had to be moved from the property. Wilson contacted AAA House Moving & Foundation Repair (hereinafter “Triple A”) to inquire about having the house and a small building moved. Defendant, Robert Franklin Bruce, met with Wilson and gave him an estimate of $8,500 to move the house and $500 to move the small building. On March 21, 2007, a contract showing signatures by “Albert Wilson” and “Johnnie Adams” was executed. Bruce signed Adams’ name on the contract, but told Wilson that he owned the business and that it was only in Johnnie Adams’ name due to defendant’s divorce and credit situation. Bruce said that he and Adams were living together and were going to get married.[1]
|2In preparation of having his house moved, Wilson took off three weeks of work to cut rights of ways, cutdown hardwood trees, remove a porch from the side of the house, and uproot and remove stumps. On Thursday, April 12, 2007, Bruce told Wilson to pay him in full or he would not be able to get the house moved for six to eight months. Wilson gave Bruce a check made payable to Triple A in the amount of $8,500 to move the house. *720 It is not clear how the $500 for the small building was paid. Wilson asked Bruce for a receipt and Bruce gave him a copy of the contract on which he had handwritten “Pd ck # 1360” and “Pd in full.” The check was not entered into the record.
On Friday, April 13, 2007, a crew from Triple A came and moved the small building. The following Monday, April 16, the crew completed the relocation of the small building. When Tuesday came and Triple A had not shown up to move the house, Wilson called Bruce and was informed that Triple A’s truck had broken down. Wilson drove to Alexandria later that day and had lunch with Bruce. Defendant told Wilson that he would refund his money, but Wilson said, “No. Move my house.” Bruce assured Wilson that the crew would be on location to move the house the next day.
The next day no one from Triple A showed up to move Wilson’s house. Wilson called Bruce again, and this time he was told that it was raining and Bruce would have to wait until it stopped raining. Later that morning Wilson called the Alexandria Police to inquire into the weather. The Alexandria Police told Wilson that it had stopped raining hours earlier.
| ^Wilson’s banker, who financed the move, was becoming concerned with all of the delays. Bruce and Johnnie Adams spoke with the banker and they agreed to refund Wilson’s money if the house was not moved by April 30, 2007. This agreement was handwritten at the bottom of the original contract and faxed to Wilson’s banker on April 18, 2007.
At some point during this time, a crew from Triple A jacked up Wilson’s house. The house started to split and they stopped work. After the continuing delays and excuses from Bruce, Wilson grew tired of waiting. He asked Bruce to refund his money. Bruce informed Wilson that he would need to send something in writing to Bruce’s attorney requesting his money back. Unable to ascertain the attorney to send the request to, Wilson contacted the authorities.
After a police investigation, Bruce was charged by bill of information with felony theft. At the time of his arrest, Bruce was on probation stemming from a 1998 conviction for illegal possession of stolen things and theft over $500 in Alexandria, Rapides Parish, Louisiana. He had been sentenced to ten years at hard labor to be followed by five years’ probation. Apparently, Bruce served the ten-year sentence and with good time was released. As a result of the present charge, his probation was revoked on September 25, 2007. Johnnie Adams was also charged with felony theft, but the cases were not consolidated. Adams had agreed to pay half the money owed to Wilson and as of the trial had paid back $2,250. Bruce had not paid anything.
l4Prior to trial, the state gave notice that it intended to introduce evidence of other crimes, wrongs or acts pursuant to La. C.E. art. 404 B(l) to show system, knowledge and intent. Defendant objected to this evidence. Because it was a bench trial, the court announced that it would hear the evidence at trial and then rule. The following testimonies were heard:

Scot Stewart

Scot Stewart testified that in January 2006 he contacted Bruce about moving a house. Bruce drafted a contract, which both parties signed. Stewart gave him a deposit check, which represented half the total amount due under the contract. The contract stipulated that Bruce was to begin moving the house within 10 days, by January 25, 2006. When Bruce never arrived, Stewart made multiple phone calls, during which Bruce would tell Stewart that he was next on the list. Finally, Stewart sent Bruce a letter informing him that if he *721 failed to move the house by April 21, 2006, Stewart would contact the sheriff and district attorney to file charges of fraud.
In May 2006, Stewart received a letter from Bruce telling him that he would not be able to move the house for various reasons and if Stewart wanted a refund he should send him something in writing. Stewart responded by sending a letter requesting his money back. As of the hearing, Stewart had yet to receive any money from Bruce.

Greg Easterling

Greg Easterling testified that in October 2006, he had a contract with Bruce in which the parties agreed that Bruce would move Easterling’s house by November 11, 2006. Although Easterling gave Bruce a deposit check for | F)$4,000, Bruce never showed up and in December 2006 Easter-ling had to hire someone else to move the house. The district attorney’s office was later able to collect Easterling’s $4,000, but Easterling said he was out $24,000 because of Bruce.

Quincy Carter

Quincy Carter contacted Bruce in December 2006 about moving a house. Carter said that Bruce wanted a total of $4,500. Carter paid him $2,250 up front as a deposit. Bruce’s secretary at the time, Johnnie Adams, was with him. Bruce never moved the house and only after the sheriffs department got involved did Bruce refund Carter’s money.
The trial court held that all three witnesses’ testimony and the corresponding exhibits were admissible under La. C.E. art. 404 B(l) and the guidelines established in State v. Prieur, 277 So.2d 126 (La.1973). Defense counsel objected to the admission of this evidence.
Following the presentation of the testimony and exhibits, the trial court stated that without the evidence of the other crimes, wrongs or acts Bruce’s guilt was nonetheless proven beyond a reasonable doubt. The court stated that “this was a course of conduct that Mr. Bruce engaged in over a long period of time and in some eases when his hand was called or when the criminal pressure got on him, he would refund the money and somehow avoid prosecution. In the Wilson case everything just kind of fell apart.”
The trial court sentenced defendant to the maximum sentence of ten years at hard labor, with credit for time served. The sentence was imposed to run consecutive to any other sentence that Bruce was currently serving. | (¡Bruce had been in jail on the probation revocation since his arrest in 2007. The defense objected to the sentence as being excessive and made an oral motion for the court to reconsider the sentence, which was denied. This appeal ensued.

Discussion

Sufficiency of the Evidence

The standard for reviewing a claim of sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could reasonably find the defendant guilty because all elements of the offenses charged were proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The Jackson standard is applicable in cases involving both direct and circumstantial evidence. State v. Sutton, 436 So.2d 471 (La.1983).
Review of sufficiency of the evidence does not extend to credibility determinations made by the trier of fact. State v. Williams, 448 So.2d 753 (La.App. 2d Cir. 1984). It is the function of the trial court or jury to assess credibility and resolve conflicting testimony. State v. Clower, 30,-745 (La.App.2d Cir.06/24/98), 715 So.2d *722 101. A reviewing court accords great deference to the factfinder’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App.2d Cir.02/25/09), 3 So.3d 685, writ denied, 09-0725 (La.12/11/09), 23 So.3d 913.
17Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential. La. R.S. 14:67.
Implicit in a charge of theft by fraud is the allegation that the defendant had no intent to carry out his promise. State v. Hardy, 376 So.2d 131 (La.1979). Though a question of fact, intent must necessarily be inferred from the circumstances of the transaction. See State v. Sepulvado, 93-2692 (La.04/08/96), 672 So.2d 158, cert. denied, 519 U.S. 934, 117 S.Ct. 310,136 L.Ed.2d 227 (1996).
Bruce’s main argument concerning the sufficiency of the evidence is that the state failed to prove that he received any of the funds from the $8,500 Wilson paid to Triple A. Bruce relies on his repeated argument that Adams was the owner of Triple A and the only signatory on the business checking account. Therefore, he did not and could not have accessed the funds. This argument, however, contradicts the testimony of both Wilson and Adams. Wilson testified that Bruce told him that he was the actual owner of Triple A. Whenever Wilson would call to inquire into why the house had not been moved and when the job would be accomplished, it was Bruce who always gave the excuses and provided Wilson with another time frame. Adams’ testimony revealed that, while she was the only signatory to the checking account, Bruce would often use the account’s ATM card to | ¿withdraw money. According to Adams, at the time of the Wilson job, Bruce was the actual owner of Triple A.
There was much contradiction between the testimonies of Bruce and Wilson and Bruce and Adams. The trial court made a credibility determination, and decided not to accept any of Bruce’s testimony that was in conflict with that of Wilson and Adams. Considering the great deference accorded to a trial court to assess credibility, we cannot say that its factual determination that Bruce took Wilson’s property is erroneous.
Much of the trial court’s findings and the arguments during trial focused on whether Bruce or Johnnie Adams owned Triple A at the time of the Wilson contract, and whether Bruce had access to the funds in the Triple A bank account. These facts bear on the “taking” element of theft. Regardless of Adams’ position, Bruce was clearly a principal in the taking of Wilson’s money. Thus, we must look to the “intent” element.
Bruce, who operated a house moving business, was paid $8,500 by A. J. Wilson to move Wilson’s house. It was alleged that the money was given based upon fraudulent representations or promises by Bruce to immediately move Wilson’s house. The basis of the charge is that defendant had no intent to carry out his promises at the time the money was given. See State v. Hardy, supra.
An intent to defraud must necessarily be inferred, and the relevant time period is when the victim is induced to part with his money or property. The crime was complete when Bruce obtained the money from Wilson. This was done by telling Wilson that the full amount must be paid Ror the house would not be moved for *723 several months. As stated by the trial judge, defendant got as much money as he could up front and never intended to fully perform the contract. Bruce did as little as possible to obtain the money, or satisfy his obligation. In this case, he moved the small building for an additional $500. When contacted by the bank and with threats of prosecution, he made a show of jacking up the house. When further delays occurred and Wilson demanded the return of his money, Bruce told Wilson to send something in writing to his attorney. This was Bruce’s modus operand).
After reviewing the record, and after giving due deference to the trial judge’s factual conclusions, we hold that the trial judge did not err when he found that Bruce misrepresented his intention to fully perform the contract with Wilson within the stated time frame. As stated in Hardy, supra, intention not to meet a future obligation is a question of fact and misrepresentation of a present state of mind as to such intention is a false representation of an existing fact. In this case, the trial judge found that when Bruce was paid he misrepresented his intention to perform a future obligation, i.e., the moving of the house within the stated time frame. Because this was an issue of fact, we give great deference to the trial judge’s findings. We cannot conclude that the trial judge’s findings of fact and his conclusion as to the intent to defraud by false pretenses were clearly wrong. Sufficient evidence exists in the record to support the trial judge’s conclusion that Bruce deliberately misrepresented his intention to perform the job.
| mAs the trial court found, “this was a course of conduct that Mr. Bruce engaged in over a long period of time and in some cases when his hand was called or when the criminal pressure got on him, he would refund the money and somehow avoid prosecution. In the Wilson case everything just kind of fell apart.”
Accordingly, we find that, after viewing the evidence in the light most favorable to the prosecution, the trial court could have reasonably concluded that Bruce’s guilt was proven beyond a reasonable doubt.

La. C.E. art. 404(B)(1)

Generally, evidence of other acts of misconduct is not admissible because it creates the risk that the defendant will be convicted of the present offense simply because the unrelated evidence establishes him or her as a “bad person.” La. C.E. art. 404(B)(1); State v. Jackson, 625 So.2d 146 (La.1993). This rule of exclusion stems from the “substantial risk of grave prejudice to the defendant” from the introduction of evidence regarding his unrelated criminal acts. State v. Prieur, 277 So.2d 126 (La.1973).
However, evidence of “other crimes, wrongs, or acts” may be admissible if the state has an independent and relevant reason for the evidence, such as to show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. La. C.E. art. 404(B)(1); State v. Roberson, 40,809 (La.App.2d Cir.04/19/06), 929 So.2d 789. The probative value of the extraneous crimes evidence must outweigh its | n prejudicial effect. La. C.E. art. 403; State v. Jacobs, 99-0991 (La.05/15/01), 803 So.2d 933, cert. denied, 534 U.S. 1087, 122 S.Ct. 826, 151 L.Ed.2d 707 (2002); State v. Hatcher, 372 So.2d 1024 (La.1979).
Where the element of intent is regarded as an essential ingredient of the crime charged, it is proper to admit proof of similar but disconnected crimes to show *724 the intent with which the act charged was committed. State v. Jackson, supra.
A trial court’s ruling on the admissibility of other crimes evidence will not be overturned absent an abuse of discretion. State v. Scales, 93-2003 (La.05/22/95), 655 So.2d 1326, ceH. denied, 516 U.S. 1050, 116 S.Ct. 716, 133 L.Ed.2d 670 (1996). The erroneous introduction of other crimes evidence is subject to harmless error review. State v. Roberson, supra.
In the case sub judice, the other crimes, wrongs or acts evidence showed that Bruce engaged in a repeated pattern of contracting to perform work, receiving up front payment for the contracted work, and performing little or no work in furtherance of fulfilling the contract. After months of delays and excuses, if the victim sought intervention from law enforcement and/or the district attorney’s office, Bruce would refund some or all of the money paid. All of these prior acts occurred within a year of the present crime. While the evidence of defendant’s other acts was prejudicial, its probative value outweighed the prejudicial effect as it helped form the basis of an essential element of the charged crime; specifically, Bruce’s intent to defraud Wilson. Defendant repeatedly took payment for future obligations | ,2that he would fail to perform. He did this once again when he took Wilson’s $8,500. Thus, we do not find that the trial court abused its discretion in admitting the evidence of other crimes, wrongs, or acts.

Excessive Sentence

A theft under La. R.S. 14:67, when the thing taken or misappropriated is valued at $500 or more, carries a maximum sentence of ten years’ imprisonment, with or without hard labor, and an optional maximum fine of $3,000. La. R.S. 14:67.
Under constitutional review, a sentence can be excessive, even when it falls within statutory guidelines, if the punishment is so grossly disproportionate to the severity of the crime that it shocks the sense of justice and serves no purpose other than to inflict needless pain and suffering. State v. Fatheree, 46,686 (La.App.2d Cir.11/02/11), 77 So.3d 1047.
Prior to imposing sentence the trial court reviewed the PSI, which listed prior felony convictions and that Bruce was on probation for a similar crime when the acts involved in the present case occurred. The trial court took cognizance of the aggravating and mitigating factors listed in La. C. Cr. P. art. 894.1. Taking all of this into consideration, the trial court found that Bruce was in need of correctional treatment provided most effectively by commitment to an institution, and that a lesser sentence would not reflect properly on the seriousness of defendant’s crime.
Considering defendant’s extensive criminal history, we do not find that the trial court committed a manifest abuse of discretion in sentencing 113him to ten years at hard labor. The sentence is neither grossly disproportionate to the seriousness of the offense nor is it a purposeless infliction of pain and suffering.

Error Patent

La. C. Cr. P. art. 873 requires that 24 hours must lapse after a motion for new trial is overruled and before the defendant is sentenced, unless the defendant waives the delay. Bruce was sentenced immediately after his motion for new trial was denied and the record does not indicate that he waived the delay. In fact, the transcript shows that Bruce vocally objected to the trial court that the delay was not being observed when he was brought back in that afternoon for notice of his rights under La. C. Cr. P. art. 930.8. However, the defendant does not raise any objection *725 in his appeal and there is no showing of prejudice, so the error is harmless.

Conclusion

For the aforementioned reasons, the conviction and sentence of defendant, Robert Franklin Bruce, is affirmed.
AFFIRMED.

. Johnnie Adams was also charged, but the two cases were not consolidated. She did, however, testily as a defense witness.