CARAWAY, J.
11 Tammy Moss was convicted of one count of felony theft over $500, in violation of La. R.S. 14:67, and sentenced to five years’ imprisonment, with all but 60 days suspended. Moss appeals her conviction and sentence. We affirm.

Facts

On May 10, 2010, Tammy Moss (“Moss”) was charged by bill of information with felony theft over $500[1] based upon acts alleged to have occurred between January 1, 2007, and January 18, 2010, while Moss was employed as an office manager and in-house biller for Dr. Regina Fakner, M.D., LLC.[2]
Moss pled not guilty and waived her right to a jury trial. A bench trial commenced on April 4, 2012. The defense stipulated to the authenticity of the documentary evidence submitted by the state in support of its case with a reservation of the right to object to hearsay information contained therein. The stipulation pertained to the LLC’s bank and tax records and documentation from Office Depot.
Dr. Regina Fakner testified on behalf of the state. She stated that she hired Moss in 2007 as an in-house biller and office manager for her medical practice. Moss was tasked with staff management, bill payment, patient billing, payroll administration and the purchasing of office supplies. Although initially pleased with Moss’s work, Dr. Fakner later discovered 12that she had made a number of unauthorized purchases from Office Depot. Dr. Fakner testified that by the time Moss quit her job (January 18, 2010), she had begun questioning Moss about cash flow issues that had arisen regarding the crediting of patients’ accounts. She had also discovered that office bills were going unpaid.
Dr. Fakner explained that part of Moss’s duties included making purchases at Office Depot for office supplies, including only toner, paper, pens and markers. She stated that Moss was never authorized to purchase personal items or a home computer for work purposes. Dr. Fakner testified that it was her practice to give Moss a blank check made out to Office Depot with her signature on it. She instructed Moss to purchase certain items and return the sales receipt to her. Moss eventually stopped returning the receipts. When Dr. Fakner questioned her about the missing receipts and large office supply bills, Moss gave various excuses.
Dr. Fakner explained that her office was part of a rewards program at Office Depot that gave credit for eligible purchases. As she grew suspicious of Moss, Dr. Fakner accessed her online rewards program ac *982 count, which included lists of purchases. At trial she identified those printouts and the checks used to pay for the purchases as follows:
1) January 17, 2009, (S — 8) totaling $2,607.49:
Dr. Fakner identified several items, including photo frames, speakers, a webcam, backpack, crayons, workbook, animal stickers and scented crayons which were not authorized purchases. Additionally, from the printout, Dr. Fakner identified unauthorized purchases of a computer for $429.99 and 14 gifts cards totaling $1049.50.
liiDr. Fakner identified a copy of a check dated January 19, 2009, in the amount of $2,607.49 (S — 7), signed by her and made out to Office Depot for payment of the total purchases reflected on the rewards printout.
2) February 9, 2009 (S — 10) totaling $817.03:
Dr. Fakner identified unauthorized purchases of 9 gift cards in the amount of $648.80.
Dr. Fakner identified an electronic check (S-9) dated February 11, 2009, in the amount of $817.03 and payable to Office Depot for the total amount reflected on the rewards printout.
Dr. Fakner testified that she never authorized the use of electronic checks which have no signature on them.
3) March 21, 2009 (S — 12) totaling $1,919.14:
Dr. Fakner identified numerous purchases on the printout which were not authorized by her including $1,678.35 for 13 gift card purchases.
Dr. Fakner identified a copy of a check to Office Depot in the amount of $1,919.14 (S — 11) which was signed by her and dated March 21, 2009. She noticed that the check was originally made out in the sum of $19.00 but marked out and initialed by Moss.
4) May 8, 2009 (S-14) totaling $1,235.46:
Dr. Fakner identified unauthorized purchases on the rewards printout including $890.65 for 7 gift card purchases.
Dr. Fakner identified a check made out to Office Depot for the sum of $1,235.46 (S — 13) on May 8, 2009. She identified her signature on the check, but testified that she did not necessarily authorize the amount.
5) December 16, 2009 (S — 16) totaling $579.78:
Dr. Fakner identified 9 unauthorized purchases for gift cards in the amount of $534.65.
Dr. Fakner identified an electronic check dated December 18, 2009, in the amount of $579.78 made out to Office Depot (S-15).
146) December 24, 2009 (S-18) totaling $902.31.
From the printout, Dr. Fakner identified various purchases which were unauthorized including 9 gift cards totaling $684.70.
Dr. Fakner also identified an electronic check which was charged to her business account number and dated December 28, 2009, for the amount of $902.31 (S — 17).
Dr. Fakner testified that she never authorized Moss to buy office supplies at an Albertson’s grocery store. She identified a check made out to Albertsons for $37.75, indicating that the purchase was for office supplies (S-19). Dr. Fakner was able to identify Moss’s handwriting on the check.
Dr. Fakner stated she did not authorize any of the aforementioned purchases, and she specifically denied that the gift cards could have been purchased as gifts for her *983 employees because she gave Christmas bonuses to her employees by check. Dr. Fakner also testified that she never authorized the use of electronic checks in her account and would only allow Moss to buy office supplies with signed paper checks.
Dr. Fakner explained that for about a year before Moss left her employment, issues began to arise regarding unpaid bills. When she requested money from Moss for a personal paycheck, Moss informed her that there was no money. Moss changed the bank password on the office computer. Because of her suspicions, Dr. Fakner authorized the bank to send monthly statements to her home. However, while she was out of town, Moss called the bank and had the statements sent back to the office. At some point, Dr. Fakner went to a storage site to look for receipts from | ¡¡Office Depot. She found only an empty box. As a result of the actions of Moss, Dr. Fakner estimated a loss of over $54,000.[3]
Margarie Parr, a licensed practical nurse employed by Dr. Fakner since 1997, also testified. She confirmed that Dr. Fakner did not have a practice of awarding employees with gifts or bonuses in the form of gift cards. Parr recalled that Moss had given gift cards for birthdays. However, she did not testify that she ever received a card for her birthday. She did recall a one-time presentation to an employee of a gift card as an employee appreciation reward. Parr could not remember whether the gift was given on behalf of Dr. Fakner.
Sarah Slaughter, a Capital One small business banker, managed the checking account for Dr. Fakner’s medical practice. Aside from checks that are physically deposited with a bank, Slaughter testified that there are multiple ways to run cheek transactions. First, electronic checks are generated when customers present physical checks to merchants. Merchants run these checks through a machine and then return them to the customers. Next, remotely-created checks are straight withdrawals from a checking account. Remotely-created checks are generated when consumers either make purchases over the telephone or do not have a physical check with them. These types of checks do not require a signature. Instead, consumers need only provide merchants with the checking account and routing numbers.
| ¡¡Slaughter identified S-9, S-15 and S-17 as remotely-created checks, and S-7, S-11, S-1S, and S-19 as actual checks deposited by the store into Capital One Bank. Slaughter explained that because Dr. Fak-ner did not process remotely-created checks, she grew concerned when she saw such checks being drawn on the account. Shortly after Moss terminated her employment, Slaughter and Dr. Fakner reviewed the checking account activity and discovered the defendant’s fraudulent activities. At the close of Slaughter’s testimony, the state rested.
Thomas Moss, the defendant’s husband, testified for the defense. He and Moss separated between June of 2009 and January of 2010 and he attributed their failing marriage to the fact that she was always working. According to Mr. Moss, his wife spent three or four nights each week at home completing office work on a laptop computer.
Wanda Sevell, Moss’s mother, testified that her daughter lived with her during her separation. Sevell recalled that Moss frequently brought home various folders, files and boxes to complete her office work.
*984 Haven Tatum, the department manager at Office Depot, testified on behalf of Moss. In his management position, Tatum claimed to know the check-cashing procedure of Office Depot. Tatum identified S-9, S-15 and S-17 as documents generated once a check has been electronically processed, meaning that a check would physically be received from a customer, run electronically and returned to the customer. These exhibits, according to Tatum, were the end result of that type of transaction. Tatum |7testified that Office Depot does not remotely create checks; however, he admitted that he had never heard of a remotely-created check.
Tatum testified that it is Office Depot’s policy always to run checks electronically. However, he explained that paper checks are taken when the system is down and when the check is required to be verified by the bank when it exceeds a certain amount. He could not say what amount required verification. Tatum identified S-21 through S-28 as copies of paper checks that were taken by Office Depot.[4]
Last to testify was Moss, who denied writing in the amount on the Alberson’s check (S-19). She claimed the check was given to another employee after she made it out to Albertson’s and that Dr. Fakner signed it. Moss stated she never presented a check to Office Depot that had not been signed by Dr. Fakner for the purchase of goods. Moss did not deny purchasing any of the questionable items. Instead, she claimed that Dr. Fakner authorized every purchase made at Office Depot, including the computer, webcam and speakers. Specifically, she testified that Dr. Fakner permitted her to buy the laptop computer to use while working from home. Additionally, Moss claimed that Dr. Fakner instructed her to buy gift cards for employees’ birthdays or other special occasions. In fact, she claimed Dr. Fakner instructed her to give one employee $400.
On cross-examination, Moss admitted that she has yet to return the laptop computer to Dr. Fakner. She was questioned regarding six of the |8Office Depot printouts and the purchases reflected on them. She admitted to making the purchases and offered no reason for them other than that they were authorized by Dr. Fakner. Moss admitted that there were eight people employed by Dr. Fakner and that she purchased 59 gifts cards in 2009 alone. Moss denied disposing of Office Depot receipts.
After considering the evidence and testimony, the trial court found Moss guilty of “theft in an amount of over $500.” Specifically, the trial court found that Moss purchased over $5,000 worth of gift cards and accepted the testimony of Dr. Fakner that the gift card purchases were unauthorized.
On May 4, 2012, Moss filed a motion for new trial which was denied. Sentencing took place on July 2, 2012. The defense made an oral motion for reconsideration of sentence which was also rejected. This appeal followed.

Discussion

Moss claims that the evidence was insufficient to convict her of felony theft because Dr. Fakner’s testimony is so contradictory that no rational trier of fact could have accepted any of her statements as true.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light *985 most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 01-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La.App.2d Cir.1/9/08), 974 So.2d 181, writ denied, 08-0499 (La.11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La.C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 05-0477 (La.2/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App.2d Cir. 1/14/09), 1 So.3d 833, writ denied, 09-0310 (La.11/6/09), 21 So.3d 297.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Speed, 43,786 (La.App.2d Cir.1/14/09), 2 So.3d 582, writ denied, 09-0372 (La.11/6/09), 21 So.3d 299.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. Speed, supra; State v. Allen, 36,180 (La.App.2d Cir.9/18/02), 828 So.2d 622, writs denied, 02-2595 (La.3/28/03), 840 So.2d 566, 02-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
Credibility determinations are the province of the trier of fact. State v. Johnson, 38,927 (La.App.2d Cir.11/23/04), 887 So.2d 751; State v. Powell, 27,959 (La.App.2d Cir.4/12/96), 677 So.2d 1008, writ denied, 96-1807 (La.2/21/97), 688 So.2d 520. Review of sufficiency of the evidence does not extend to credibility determinations made by the trier of fact. State v. Bruce, 47,055 (La.App.2d Cir.5/25/12), 93 So.3d 717; State v. Lara, 46,639 (La.11/2/11), 78 So.3d 159; State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). It is the function of the trial court or jury to assess credibility and resolve conflicting testimony. Bruce, supra; State v. Clower, 30,745 (La.App.2d Cir.06/24/98), 715 So.2d 101. A reviewing court accords great deference to the factfinder’s decision to accept or reject the testimony of a witness in whole or in part. Bruce, supra.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support the requisite factual conclusion. Johnson, supra; Powell, supra.
Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential. La. R.S. 14:67.
 iWhen viewed in the light most favorable to the prosecution, the evidence presented at trial was sufficient to convict Moss of felony theft over $500. Moss does not deny that she purchased all of the items that are the subject of the theft *986 charges. Her sole defense is that she purchased the computer and other items, including numerous gift cards 7on behalf of the LLC, with the consent of Dr. Fak-ner. While Dr. Fakner readily admitted to signing checks prior to Moss’s shopping for authorized office supplies, she clearly testified that she gave Moss no authority to purchase personal items, such as a computer, webcam or gift cards. The trial court obviously accepted Dr. Fakner’s testimony as credible. One employee of the LLC testified that Dr. Fakner never gave gift cards to her employees. Further, Sarah Slaughter testified that the remotely-created checks were atypical for her client’s checking account. Considering this testimony as well as the documentary evidence that showed that Moss used LLC funds to purchase over $5,400 in gift cards from Home Depot during 2009 alone, the trial court’s conclusion that Moss was guilty of every element of felony theft is a reasonable one. This assignment is without merit.
Moss next makes an ineffective assistance of counsel claim. She argues that counsel’s performance was constitutionally deficient in that he prejudicially stipulated to the “admission of virtually all of the evidence used to convict the defendant.” This evidence included the documentation from Office Depot and the investigating officer’s report, which reported Dr. Fak-ner’s loss of $54,000. Moss also complains that her counsel failed to object to the hearsay testimony regarding the purchases and made no 112meaningful effort to prepare Moss to refute the allegations through her testimony. She argues that these acts “critically undermined any defense of this case.”
Claims of ineffective assistance of counsel are more properly raised in an application for post conviction relief in the trial court because it provides the opportunity for a full evidentiary hearing under La.C.Cr.P. art. 930. State v. Eiskina, 42,-492 (La.App.2d Cir.9/19/07), 965 So.2d 1010; State v. Lane, 40,816 (La.App.2d Cir.4/12/06), 927 So.2d 659, writs denied, 06-1453 (La.12/15/06), 944 So.2d 1283, 06-2502 (La.5/4/07), 956 So.2d 599. When the record is sufficient, however, allegations of ineffective assistance of trial counsel may be resolved on direct appeal in the interest of judicial economy. Id.
To establish that her attorney was ineffective, the defendant first must show that counsel’s performance was deficient. This requires a showing that counsel made errors so serious that he was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. The relevant inquiry is whether counsel’s representation fell below the standard of reasonableness and competency as required by prevailing professional standards demanded for attorneys in criminal cases. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The assessment of an attorney’s performance requires his conduct to be evaluated from counsel’s perspective at the time of the occurrence. A reviewing court must give great deference to trial counsel’s judgment, tactical decisions and trial strategy, strongly presuming he has exercised | ^reasonable professional judgment. State v. Grant, 41,745 (La.App.2d Cir.4/4/07), 954 So.2d 823, writ denied, 07-1193 (La.12/7/07), 969 So.2d 629; State v. Moore, 575 So.2d 928 (La.App. 2d Cir.1991).
Second, the defendant must show that counsel’s deficient performance prejudiced his defense. This element requires a showing that the errors were so serious as to deprive the defendant of a fair trial, i.e., a trial whose result is reliable. Strickland, supra. The defendant must prove actual prejudice before relief will be granted. It is not sufficient for the defendant to show *987 the error had some conceivable effect on the outcome of the proceedings. Rather, he must show that, but for counsel’s unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. Strickland, supra; Grant, supra.
From this record, we are unable to dispose of Moss’s claims of ineffective assistance of counsel. Complete resolution of issues regarding the hearsay nature of the Office Depot printouts and the Officer’s report can be resolved only after a full and complete evidentiary hearing. However, we do note that Moss’s own admission in her testimony was that she made the purchases as reflected on the Office Depot printouts. Likewise, counsel’s trial strategies utilized in Moss’s defense may be more appropriately evaluated after the presentation of testimony on the issue in post conviction relief proceedings.
Finally, Moss argues that the sentence imposed is too severe in light of the circumstances of the case as well as her background as a first-time offender who cares for a special needs grandchild.
|14An appellate court utilizes a two-pronged test in reviewing a sentence for excessiveness. First, the record must show that the trial court took cognizance of the criteria set forth in La.C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Lathan, 41,-855 (La.App.2d Cir.2/28/07), 953 So.2d 890, writ denied, 07-0805 (La.3/28/08), 978 So.2d 297. The articulation of the factual basis for a sentence is the goal of La. C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La.C.Cr.P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Swayzer, 43,350 (La.App.2d Cir.8/13/08), 989 So.2d 267. The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense, and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Ates, 43,327 (La.App.2d Cir.8/13/08), 989 So.2d 259, writ denied, 08-2341 (La.5/15/09), 8 So.3d 581. There is no requirement that specific matters be given any particular weight at sentencing. State v. Shumaker, 41,547 (La.App.2d Cir.12/13/06), 945 So.2d 277, writ denied, 07-0144 (La.9/28/07), 964 So.2d 351.
Second, the court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const, art. 1, § 20 if it is | ^grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 01-0467 (La.1/15/02), 805 So.2d 166; State v. Robinson, 40,983 (La.App.2d Cir.1/24/07), 948 So.2d 379.
A trial court has wide discretion to sentence within the statutory limits. State v. Guzman, 99-1528, 99-1753 (La.5/16/00), 769 So.2d 1158; State v. Dunn, 30,767 (La.App.2d Cir.6/24/98), 715 So.2d 641. Absent a showing of manifest *988 abuse of discretion, a sentence will not be set aside as excessive. Guzman, supra.
At the time of the offense, La. R.S. 14:67B (1) provided:
B. (1) Whoever commits the crime of theft when the misappropriation or taking amounts to a value of five hundred dollars or more shall be imprisoned, with or without hard labor, for not more than ten years, or may be fined not more than three thousand dollars, or both.
Prior to sentencing Moss, the trial court reviewed the sentencing factors of La. C.Cr.P. art. 894.1, specifically concluding that there was no undue risk that Moss would commit another crime during a period of a suspended sentence. The court considered that for an extended period of time, Moss took advantage of a position of trust which caused substantial loss to the victim. Accordingly, Moss was found to be in need of correctional treatment for which a lesser sentence was not appropriate. The court observed that Moss used her position to facilitate the commission of |1t;tlie offense and that she could have been charged with multiple counts of theft.
In mitigation, the court found that Moss’s conduct neither caused nor threatened physical serious harm, that she had no history of prior delinquency or criminal activity and was unlikely to commit the same crime. The court also concluded that Moss was likely to respond to probationary treatment and that imprisonment would entail an excessive hardship upon her.
After consideration of these aggravating and mitigating circumstances, the trial court imposed a sentence of five years at hard labor and suspended all but 60 days of the sentence with five years’ probation.
We find adequate La.C.Cr.P. art. 894.1 compliance by the sentencing court. Additionally, the sentence imposed is not constitutionally excessive. For her conviction, Moss faced maximum sentencing exposure of 10 years, although her actions would have supported charges for additional counts of the crime. She also benefitted from the state’s dismissal of other charged offenses. Despite her lack of a criminal history, Moss’s continued abuse of a position of trust which caused substantial economic loss to the victim warrants the mid-range sentence imposed by the court. Accordingly, her sentence is affirmed.

Conclusion

For the foregoing reasons, Moss’s conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.

. During trial, the state abandoned prosecution of Moss for payroll fraud.

. The LLC was the named victim in this matter.

. The defense stipulated into evidence the case summary report of the investigating officer without the necessity of calling him to testify.

. S-21 through S-28 were additional checks made out to Office Depot in varying amounts (including $2,325.16 and $3,411.57), dated from July 2007 through June 2009 and signed by Dr. Fakner. The checks were not otherwise identified by any witness.