GARRETT, J.
| pursuant to a plea agreement providing for a sentencing cap of 30 years, the defendant, Michael Allen Lewis, pled guilty to aggravated burglary and entered an Alford[1] plea to sexual battery. The trial court sentenced him to 30 years at hard labor on the aggravated burglary conviction and seven years at hard labor, without the benefit of probation, parole or *1176 suspension of sentence, on the sexual battery conviction. The sentences were imposed concurrently. The defendant now appeals his sentences as excessive. We affirm.
FACTS
At about 2 a.m. on July 25, 2009, the victim was in the bedroom of her home in Monroe with her two young children, a one-year old toddler and a one-week old infant, when several men broke down the front door of the residence. They wore masks and gloves. They rushed through the house into the bedroom. One of the men struck the victim in the head with a gun.
Another man, subsequently identified as the defendant, began demanding to know where the victim’s husband was. He also demanded drugs and money. He grabbed the victim and forced her down on the bed. The other men left the room. The defendant straddled the victim and put his hand on her throat, choking her. She continued to struggle. The defendant called to his associates to “come kill this bitch, she’s fighting back.”
The other men returned to the room, and the defendant ordered them to remove the victim’s clothes. They removed her clothing from the waist down and began rubbing her genitals with their hands. This continued despite the victim telling them that she had just had a baby.
12At some point, the sexual assault ended and the other men left the room. The victim managed to get off the bed and the defendant grabbed her again. This time he seized her from behind in a choke hold. The victim continued to fight him and they ended up in the hallway outside the bedroom. When the victim was pushed against the hallway wall, she managed to pull down the defendant’s mask. She immediately recognized him as someone with whom she had attended school. Calling him by his street name, she demanded to know why he was doing this. After she identified herself to him, the defendant apologized to her. He then allowed her to get dressed and leave the house with her children. As the victim carried her children down the street to a relative’s house, the defendant followed behind her, apologizing and pleading with her not to tell on him.
During the subsequent investigation of the home invasion, the police determined that two televisions were stolen from the residence. Within a few hours of the incident, the victim gave a statement to the police and they photographed her head injury. After the victim informed the police that she recognized the defendant as one of her assailants, they showed her a photo lineup containing his photo to verify the identification. After she positively identified the defendant as the man who held her down while his confederates sexually assaulted her, the police unsuccessfully tried to locate him. An arrest warrant was obtained.
In. March 2010, the defendant was arrested in Killeen, Texas, on the outstanding warrant. He gave a recorded statement to a Killeen detective in which he admitted his participation in the burglary of the victim’s home. However, he denied that anyone was armed or that there was any sexual assault. He claimed that another participant was the person who grabbed the victim by the neck and pushed her in the hallway.
| sTrial by jury began on February 27, 2013. The state presented the testimony of the victim, the lead police investigator, and the Killeen police detective who interviewed the defendant after his arrest. A DVD of the interview was introduced into evidence and played for the jury. The *1177 defendant did not testify on his own behalf at trial or present any witnesses.
After the completion of evidence but before closing arguments and submission of the case to the jury, the defendant was allowed to enter into a plea agreement whereby he would plead guilty as charged to the aggravated burglary charge while entering an Alford plea to the sexual battery charge. The factual basis given for the pleas was the testimony presented at trial with the understanding that, while he admitted guilt to the aggravated burglary charge, he was pleading to the sexual battery charge because, in light of the evidence, it was in his best interest to do so. The state agreed to a sentencing cap of 30 years and also agreed it would not file a habitual offender bill against the defendant, who had two prior felony convictions. The trial court properly Boykinized the defendant, accepted the pleas, and ordered a presentence investigation (PSI) report.
In April 2013, the defendant filed a pro se motion to withdraw his guilty plea. He alleged that there was no thorough investigation, that he was actually innocent of the charges, and that he was told by his attorney during the trial that he would get no more than 10 years. At a hearing on May 28, 2013, the trial court denied the motion.
The trial court then sentenced the defendant. After a lengthy and meticulous articulation of sentencing factors, the trial court imposed concurrent terms of imprisonment of seven years at hard labor, without benefit of parole, |4probation or suspension of sentence, on the sexual battery charge and 30 years at hard labor on the aggravated burglary charge.
The defendant filed a motion to reconsider sentence in which he contended that: (1) no one was harmed in the offense; (2) he “actually protected and assisted the victim;” (3) he had shown remorse in contacting the victim to apologize; and (4) there was no evidence that he benefitted from the offense or received anything of value. The trial court denied the motion in court on September 11, 2013.
The defendant appeals his sentences as excessive.[2]
LAW
An appellate court utilizes a two-pronged test in reviewing a sentence for excessiveness. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. State v. Smith, 433 So.2d 688 (La. 1983); State v. Lathan, 41,855 (La.App.2d Cir.2/28/07), 953 So.2d 890, writ denied, 2007-0805 (La.3/28/08), 978 So.2d 297. The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense, and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Ates, 43,327 (La.App.2d Cir.8/13/08), 989 So.2d 259, writ denied, 2008-2341 (La.5/15/09), 8 So.3d 581.
| ¡^Second, the court must determine whether the sentence is constitution *1178 ally excessive. A sentence violates La. Const. Art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La. 1993); State v. Moss, 48,289 (La.App.2d Cir.11/20/13), 127 So.3d 979. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 2001-0467 (La.1/15/02), 805 So.2d 166; State v. Moss, supra.
Whoever commits the crime of aggravated burglary shall be imprisoned at hard labor for not less than one nor more than 30 years. La. R.S. 14:60.
Whoever commits the crime of sexual battery shall be punished by imprisonment, with dr without hard labor, without benefit of parole, probation, or suspension of sentence, for not more than 10 years. La. R.S. 14:43.1(0(1).
DISCUSSION
The defendant complains that the trial court imposed the maximum sentence of 30 years for aggravated burglary and that he received a sentence in the upper one-third of the statutory range for sexual battery. He also contends "that the trial court misstated certain facts pertaining to the crimes.
Before imposing sentence, the trial court reviewed a PSI report detailing the defendant’s criminal and social history. At the sentencing hearing, the trial court recited the defendant’s lengthy criminal history, which began in 1999. Many of the crimes involved burglaries and thefts. The defendant, who was 27 years old at the time of the instant offenses, had two felony convictions for which he received probation: 2001 unauthorized use of a movable and 2003 simple burglary of an inhabited dwelling. In both instances, his probation was revoked.
IfiAs to the defendant’s social history, the trial court noted that the defendant dropped out of school in ninth grade at the age of 18. His employment history, which began when he was 24 years old, was scant and sporadic. The trial court further observed that the defendant had two children, but he did not even know the last name of one of them. In the PSI report, the defendant admitted heavy alcohol use, regular use of ecstasy, and past use of marijuana and PCP.
In its review of the sentencing factors set forth in La. C. Cr. P. Art. 894.1, the trial court found several aggravating factors. Among them were the deliberate cruelty, threats, and actual violence inflicted upon the victim in full view of her children, the older of whom was traumatized. As a “highly aggravating” factor, the trial court considered the defendant’s lack of remorse and his efforts to blame the victim. In particular, the court referenced a letter written by the defendant in which he denied ever touching the victim, insisted that no one sexually assaulted her, and insinuated that the victim made up the accusations out of anger. The trial court stated that it found no mitigating factors in the defendant’s favor. Finally, the trial court observed the great leniency the defendant received in the plea agreement, which provided for a maximum sentence of 30 years with no multi-bill. As a third-felony offender, the defendant faced a significantly longer sentence if the state had filed a habitual offender bill of information against him.
• In this case, the trial court had the benefit of hearing from the witnesses who testified at trial. The evidence showed that the defendant participated in a violent home invasion in which a female victim, *1179 who had just had a baby, was sexually assaulted. After the defendant and his associates broke down the front door of the victim’s home and one of the other men struck the victim in the head with a gun, the defendant himself viciously manhandled the victim. After forcing her onto the |7bed, he straddled her and held her down by the neck while his associates obeyed his command to remove the victim’s clothes. In the presence of the victim’s extremely vulnerable young children, the other men then sexually assaulted the terrified victim by touching her genitals while the defendant continued to hold her down. As correctly noted by the trial court, the “mood of the event” was changed only when the tenacious victim fought back and unmasked the defendant. Although the defendant desperately attempted to cast himself in a heroic light, arguing that he “protected” the victim and “apologized” to her, he did so only after he realized that he knew her — and, more importantly, that she recognized and could identify him. Furthermore, despite his “apologies,” the defendant subsequently blamed the victim and accused her of making up the accusations.
We find that the trial court adequately considered the relevant factors in imposing sentence. Additionally, the sentences are not disproportionate to the severity of the defendant’s crimes and do not shock the sense of justice. Therefore, this assignment of error lacks merit.
CONCLUSION
The defendant’s convictions and sentences are affirmed.
AFFIRMED.

. North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

. Ordinarily, a sentence imposed under an agreed sentencing cap cannot be appealed. La.C.Cr.P. art. 881.2; State v. Young, 96-0195 (La. 10/15/96), 680 So.2d 1171. However, during the guilty plea colloquy, the trial court specifically told the defendant that he would be able to appeal his sentences. In close cases, this court has held that fairness dictates allowing review of the sentence, even when the defendant is sentenced within an agreed sentencing range or cap where the defendant was unaware that he was waiving his right to appeal the sentence. See State v. Smith, 47,-800 (La.App.2d Cir.2/27/13), 110 So.3d 628; State v. Foster, 42,212 (La.App.2d Cir.8/15/07), 962 So.2d 1214. Therefore, we will review the defendant's sentences in the instant case.