STONE, J.
Donovan Carman pled guilty to manslaughter and was sentenced to the maximum penalty of 40 years at hard labor. He now appeals, arguing his sentence is unconstitutionally excessive. For the following reasons, Carman's conviction and sentence are affirmed.
FACTUAL BACKGROUND
On December 28, 2015, Donovan Carman ("Carman") contacted his estranged girlfriend, Deidra Nichols ("Nichols"), to *143 arrange the pickup of their two-year-old daughter, Emma. Nichols advised Carman he could not pick up Emma because it was "too cold" outside. Notwithstanding Nichols' objection, Carman left his job in Bossier City and drove approximately 22 minutes to the home of Nichols' parents in Stonewall, with whom Nichols and her three children resided.[1]
After arriving at the Nichols residence and knocking on the door, Carman placed both hands into the front pocket of his hoodie. Nichols' elderly and disabled father, Bobby Nichols ("Bobby"), opened the front door and Carman pulled a gun from his pocket and shot Bobby in the head. Bobby subsequently died from the gunshot wound.
On February 25, 2016, Carman was indicted for the second-degree murder of Bobby. On February 14, 2017, pursuant to a plea agreement, the State amended the indictment and filed a bill of information charging Carman with manslaughter to which Carman subsequently pled guilty. On May 18, 2017, a sentencing hearing was held and a presentence investigation (PSI) report was ordered. Thereafter, the trial court sentenced Carman to 40 years at hard labor. Carman timely filed a motion to reconsider the sentence, which was denied. On appeal, Carman argues his 40-year sentence, which is the maximum sentence for a conviction of manslaughter, is unconstitutionally harsh and excessive.
DISCUSSION
The trial court has wide discretion in the imposition of sentences within the statutory limits and such sentences should not be set aside as excessive in the absence of a manifest abuse of that discretion. State v. Williams, 03-3514 (La. 12/13/04), 893 So.2d 7 ; State v. Allen , 49,642 (La. App. 2 Cir. 2/26/15), 162 So.3d 519, writ denied , 15-0608 (La. 1/25/16), 184 So.3d 1289. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. State v. Allen, supra; State v. Zeigler, 42,661 (La. App. 2 Cir. 10/24/07), 968 So.2d 875. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. State v. Jackson, 48,534 (La. App. 2 Cir. 1/15/14), 130 So.3d 993.
As a general rule, maximum or near-maximum sentences are reserved for the worst offenders and the worst offenses. State v. Cozzetto , 07-2031 La. 2/15/08), 974 So.2d 665 ; State v. Hogan , 47,993 (La. App. 2 Cir. 4/10/13), 113 So.3d 1195, writ denied , 13-0977 (La. 11/8/13), 125 So.3d 445.
In reviewing a sentence for excessiveness, an appellate court uses a two-prong process. First, the record must show the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. The trial court is not required to list every aggravating or mitigating circumstance so long as the record reflects that it adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La. 1983) ; State v. Washington , 50,337 (La. App. 2 Cir. 1/13/16), 185 So.3d 852, writ denied , 16-0224 (La. 2/3/17), 215 So.3d 688. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, and employment record), prior criminal record, seriousness of offense, and the likelihood of *144 rehabilitation. State v. Jones, 398 So.2d 1049 (La. 1981) ; Washington, supra ; State v. Ates, 43,327 (La. App. 2 Cir. 8/13/08), 989 So.2d 259, writ denied , 08-2341 (La. 5/15/09), 8 So.3d 581. There is no requirement that specific matters be given any particular weight at sentencing. State v. Thompson, 50,392 (La. App. 2 Cir. 2/24/16), 189 So.3d 1139 ; State v. Caldwell , 46,718 (La. App. 2 Cir. 11/2/11), 78 So.3d 799.
Second, the court must determine whether the sentence is unconstitutionally excessive. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the severity of the crime or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La. 1993) ; State v. Lewis, 49,138 (La. App. 2 Cir. 6/25/14), 144 So.3d 1174, writ not consid. , 16-0235 (La. 3/14/16), 188 So.3d 1070. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 01-0467 (La. 1/15/02), 805 So.2d 166 ; State v. Lewis, supra.
A substantial advantage obtained by means of a plea bargain is a legitimate consideration in sentencing. State v. Mendenhall , 48,028 (La. App. 2 Cir. 5/15/13), 115 So.3d 727 ; State v. Ross , 35,552 (La. App. 2 Cir. 2/27/02), 811 So.2d 176. Accordingly, where a defendant has pled guilty to an offense which does not adequately describe his conduct or has received a significant reduction in potential exposure to confinement through a plea bargain, the trial court has great discretion in imposing even the maximum sentence for the pled offense. State v. Givens , 45,354 (La. App. 2 Cir. 6/23/10), 42 So.3d 451, writ denied , 10-1584 (La. 1/14/11), 52 So.3d 902 ; State v. Germany , 43,239 (La. App. 2 Cir. 4/30/08), 981 So.2d 792 ; State v. Black , 28,100 (La. App. 2 Cir. 2/28/96), 669 So.2d 667, writ denied , 96-0836 (La. 9/20/96), 679 So.2d 430.
La. R.S. 14:31(B) provides that a person convicted of manslaughter shall be imprisoned at hard labor for not more than 40 years.
We find the trial court did not abuse its discretion in sentencing Carman to 40 years at hard labor for the manslaughter of Bobby. On the day he murdered Bobby, Carman's vehicle was equipped with a video and audio recorder. The audio recorder revealed that during Carman's drive to Stonewall, Carman loaded a bullet into the chamber of his gun. The video recorder showed Carman pull into the Nichols' driveway and walk onto the front porch of the Nichols home. Carman's hands were in the front pocket of his hoodie. Before Carman knocked on the door, Carman briefly paced back and forth on the porch and peered into the windows of the house several times. After Carman knocked and Bobby answered the door, Carman shot Bobby, stepped over Bobby's body, and entered the house. About a minute after he disappeared inside the home, Carman walked out carrying Emma. Emma is crying and can be heard saying, "Why did you boom, Daddy? I want Pawpaw." For the most part, Carman ignored his daughter, who was clearly distraught, during the 30 minutes she was in the vehicle with him after the shooting.
While Emma was crying in the backseat, Carman called his mother and told her, "I just killed Bobby; they tried to keep my kids from me and I flipped and I lost my fucking cool. He's dead, so I am going to drop Emma off to you and I'm leaving. I won't be alive ... I'm tired of people running over me. I am sick of this shit..." Carman told his mother he loved her and he would text his location after he dropped *145 Emma off to her so that she could find his body.
As promised, Carmen dropped Emma off with his parents. After leaving his parents' house, Carman again talked by telephone with his parents and also talked with his girlfriend. During those conversations, Carman did not express remorse over his actions, except to discuss that he would rather die than go to jail. Carman did not try to kill himself.
Carman maintains the trial court should have considered the mitigating factor of the psychological stressors he was undergoing at the time of the shooting, including the fact that his parental rights had recently been terminated for one of his other children. These stressors were explained in a confidential psychological report prepared by a clinical psychologist, Jennifer Russell, Ph.D. The trial judge expressed to the parties that she had read and considered the report in sentencing Carman. Carman contends the trial court failed to consider other mitigating factors, such as his being a recovering alcoholic and a 12-year military veteran who served multiple tours of duty in the Middle East. Additionally, he has a long employment history and no previous felony convictions.
While the fact that Carman was a first-felony offender and suffered from psychological issues at the time of the shooting are mitigating factors, these factors do not mandate a more lenient sentence. See La. C. Cr. P. art 905.5 and art. 894.1. Jurisprudence reflects the maximum manslaughter sentences have been upheld when a first-time felony offender has committed a violent criminal act. See State v. Reese, 49,849 (La. App. 2 Cir. 5/20/15), 166 So.3d 1175, writ denied , 15-1236 (La. 06/03/16), 192 So.3d 760 ; State v. Leone, 48,892 (La. App. 2 Cir. 5/15/14), 140 So.3d 793, 801, writ denied sub nom. State ex rel. Leone v. State, 14-1337 (La. 4/10/15), 163 So.3d 804.
Furthermore, while Carman submitted evidence explaining the psychological stressors that triggered the shooting, he did not submit any evidence that suggested he failed to appreciate the criminality of his conduct. On the contrary, the audio recording of Carman's phone calls with his parents and his girlfriend show he did indeed understand the seriousness of his conduct at the time of the offense.
The trial court also read victim impact statements and heard testimony from Nichols, Bobby's wife, Carolyn Nichols ("Carolyn"), Bobby's niece, Sylina Bianco ("Bianco"), and Bobby's son, Christian Nichols ("Christian"). Carman and his parents also testified.
Carolyn attested to the emotional and financial impact caused by Bobby's death. She testified she and Bobby had been married over 40 years and supported Nichols and her three children. Carolyn stated that, due to the emotional stress of her husband's death, she could not continue working and, without an income from her husband, or an income of her own, she lost her home and vehicle.
Nichols testified she and her three young children, two of whom were fathered by Carman, were home on the day of the shooting. She discussed the devastating emotional impact that witnessing Carman shoot her father had on her and the children.
Bianco and Christian testified about their close relationship with Bobby. Both stated Mr. Nichols was feeble and disabled at the time of the shooting. Bianco stated Carman could have easily walked past Bobby and entered the house without any violence. Christian testified his father had treated Carman well and Carman had even lived with his parents for some time.
Carman's parents testified Carman was a giving person, a good father, and a hard *146 worker. Michael Carman ("Michael"), Carman's father, testified that during Carman's deployment to the middle-east, Carman, while not on the front lines, had witnessed fighting and death. Michael also explained it was not unusual for Carman to carry guns in his vehicle; he was raised with guns and was trained to use them safely and for self-defense.
Carman discussed his time in the military, serving in the Middle East, and the deaths he has witnessed. He testified he has multiple biological children, but had lost his parental rights to one of his children shortly before the shooting. He explained he was close to Emma and shared parenting responsibilities with Nichols. Carman admitted he shot Bobby, but claimed it was not intentional and expressed his remorse. Carman could not, however, provide a reasonable explanation as to why he carried a concealed gun to the Nichols home to pick up his daughter.
The trial court also noted that, pursuant to the psychological report by Dr. Russell, Carman has a 48% risk of recidivism within 10 years. Carman challenges the trial court's reliance on Dr. Russell's report on the basis that "recidivism" means only that Carman is at risk of committing another crime, not necessarily the same or similar crime. However, pursuant to La. C. Cr. P. art. 894.1(A)(1), the fact that Carman is at risk to commit another crime, any crime, is a valid consideration in determining the sentence to be imposed, and the weight given to the report was within the trial court's discretion.
After considering all evidence and testimony presented at trial, the trial court sentenced Carman to 40 years at hard labor, the maximum sentence for a manslaughter conviction, stating the following:
By your actions that day, Mr. Carman, you devastated the Nichols family. Not only did they lose their husband, father, uncle, grandfather, but they also lost their home and their vehicles. Mrs. Carolyn Nichols lost her job. Christian Nichols was forced to leave his job and friends in Fort Worth and move to Shreveport to support his mother, his sister and her children, which are your children. You traumatized the three children who were in that home when you shot their grandfather. Two of those children are your own biological children. The Nichols family was not the only one impacted by your actions. Your own family has suffered as well: your parents, your siblings, your children and others. Your actions on December 28, 2015 were calculated and deliberate. During the twenty-two minute drive to Stonewall, you no doubt thought about what you were going to say and what you were going to do and how you were going to do it. Rather that [sic ] utilizing that drive as an opportunity to cool off as a reasonable person would have done, you utilized it as an opportunity to plan. You went to the Nichols home with a loaded gun in your hands to show them that you were in control, you were powerful, and you were willing to harm and even kill to get your way, and that's exactly what you did. Even when describing the events that day to your girlfriend, your parents and your sister on the telephone, you never expressed remorse, instead you attempted to justify your actions.
The trial court indicated the shooting "clearly meets the definition of second-degree murder." Consequently, the trial court held that by pleading guilty to manslaughter, Carman received a substantial benefit which reduced his sentencing exposure from a mandatory sentence of life imprisonment without benefits for second-degree murder, to a maximum sentence of 40 years at hard labor.
*147 This Court finds the trial court adequately reviewed the facts of this case PSI report, Carman's criminal history, and the sentencing factors set forth in La. C. Cr. P. art. 894.1. Considering the senseless nature of Carman's crime, the impact on the victim's family, and the benefit Carman received from the plea agreement, the 40-year hard labor sentence imposed by the trial court neither shocks the sense of justice, nor is it grossly disproportionate to the severity of the offense. This assignment of error is without merit.
CONCLUSION
For the foregoing reasons, Donovan Carman's conviction and sentence are affirmed.
AFFIRMED.

Carman is the father of two of Nichols' children.